UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

In re:                                              Chapter 13


ROI C. CRICHLOW,                                    Case No. 24-41819-ess



                         Debtor.

-------------------------------------------------------------------x



## MEMORANDUM DECISION ON HART ROAD CORP.'S MOTION
## FOR *NUNC PRO TUNC* OR RETROACTIVE RELIEF FROM THE AUTOMATIC STAY





Appearances:

Roi C. Crichlow                    Rachel S. Blumenfeld, Esq.
735 Putnam Avenue                  Law Office of Rachel S. Blumenfeld PLLC
Brooklyn, NY 11221                 26 Court Street, Suite 2220
                                   Brooklyn, NY 11242
        *Debtor, pro se*

                                   Howard M. Lefkowitz, Esq.
                                   Law Office of Howard M. Lefkowitz
                                   32 Flag Hill Road
                                   Chappaqua, NY 10514

                                           *Attorneys for Hart Road Corp.*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Many know the axiom that "it is better to ask forgiveness than permission."  This quote is attributed to Grace Murray Hopper, a pathbreaking computer scientist, mathematician, and Rear Admiral in the United States Navy, one of the first women to hold that rank.  Her personal motto was reportedly "Dare and Do," and her accomplishments were recognized by many.  During her lifetime, Admiral Hopper received more than 40 honorary degrees; was the first woman to receive the National Medal of Technology; and was the eponym for a U.S. Navy guided missile destroyer and information services center, a satellite, and a university building.  Posthumously, Admiral Hopper received the Presidential Medal of Freedom.

But Admiral Hopper's axiom does not necessarily apply in the context of debtors, creditors, and the automatic stay.  In this context, it is plainly the better course to ask permission, or relief from the automatic stay, before taking any action to collect on or enforce a claim or debt.  Still, that does not happen in every circumstance.  When an action is taken that violates the automatic stay, bankruptcy courts may be asked not only to grant stay relief, but to give that relief *nunc pro tunc* or retroactive effect.  And that is the question placed before the Court here in the motion of Hart Road Corp. for *nunc pro tunc* or retroactive relief from the automatic stay, in order to validate a sale of property that it undertook after this bankruptcy case was filed.

## Procedural Background

### *The State Court Action*

On January 7, 2019, Hart Road Corp. ("Hart Road") commenced a partition action related to 735 Putnam Avenue, in Brooklyn (the "Putnam Avenue Property") in New York Supreme Court, Kings County (the "New York State Court"), under Index No. 500397/2019 (the

"Partition Action").

Some four years later, in January of 2023, Hart Road filed a motion for, among other relief, a Judgment of Partition and Sale in the Partition Action. No opposition was filed to that motion, the motion was fully submitted on April 13, 2023, and on October 11, 2023, the New York State Court entered a Judgment of Partition and Sale. Hart Road scheduled an auction of the Putnam Avenue Property for January 4, 2024. *See* ECF No. 9 (the "Stay Relief Motion" or "Stay Relief Mot."), ¶ 8.

### *Mr. Crichlow's January 2024 Bankruptcy Case*

On January 4, 2024, Roi C. Crichlow, by counsel, filed a petition for relief, Case No. 24-40037, under Chapter 13 of the Bankruptcy Code (the "January 2024 Case"). *In re Crichlow*, Case No. 24-40037, ECF No. 1. Less than three weeks later, on January 22, 2024, Hart Road filed a motion for relief from the automatic stay relating to the Putnam Avenue Property. *In re Crichlow*, Case No. 24-40037, ECF No. 8 (the "January 2024 Stay Relief Motion"). In response, on February 26, 2024, Mr. Crichlow, again by counsel, filed a letter stating that "the Debtor can offer no substantive opposition to the [Movant's] Motion [for stay relief]." *In re Crichlow*, Case No. 24-40037, ECF No. 15.

On February 27, 2024, this Court held a hearing on Hart Road's January 2024 Stay Relief Motion, at which Hart Road, by counsel, appeared and was heard, and Mr. Crichlow did not appear. The Court noted that Mr. Crichlow, by his counsel, filed a letter stating that he did not have a basis to oppose the relief that Hart Road sought in the motion, the motion was granted, and on March 12, 2024, the Court entered an Order granting the motion. *In re Crichlow*, Case No. 24-40037, ECF No. 16. That Order states, in part, that "the automatic stay is modified to permit Hart [Road] to pursue its rights under applicable law with respect to the [Putnam Avenue]

Property." *In re Crichlow*, Case No. 24-40037, ECF No. 16 at 2.

On March 20, 2024, the Chapter 13 Trustee in the January 2024 Case filed a Motion to Dismiss on grounds, among others, that Mr. Crichlow had not made the required Chapter 13 Plan payments to the Trustee, and had not appeared at the Section 341 Meeting of Creditors. *In re Crichlow*, Case No. 24-40037, ECF No. 17. On April 5, 2024, Mr. Crichlow, again by counsel, filed a letter stating that "the Debtor can offer no substantive opposition in fact or law [to] the Trustee's Motion [to dismiss]." *In re Crichlow*, Case No. 24-40037, ECF No. 18.

On April 8, 2024, this Court held a hearing on the Chapter 13 Trustee's Motion to Dismiss Mr. Crichlow's bankruptcy case, at which the Chapter 13 Trustee appeared and was heard, and Mr. Crichlow did not appear. The Court again noted that Mr. Crichlow, by his counsel, filed a letter stating that he did not have a basis to oppose the relief that the Chapter 13 Trustee sought in the motion, and granted the Motion to Dismiss. The Chapter 13 Trustee was directed to settle a proposed order of dismissal on Mr. Crichlow and his counsel. *In re Crichlow*, Case No. 24-40037, ECF No. 19. And on April 29, 2024, the Court entered an Order dismissing Mr. Crichlow's January 2024 Case. *In re Crichlow*, Case No. 24-40037, ECF No. 20.

*Mr. Crichlow's April 2024 Bankruptcy Case*

On April 29, 2024 (the "Petition Date"), the same day that his January 2024 Case was dismissed by the Court, Mr. Crichlow, *pro se*, commenced this bankruptcy case by filing a petition for relief under Chapter 13 of the Bankruptcy Code. ECF No. 1. On that same date, Mr. Crichlow also filed Schedule A/B (Property) (Official Form 106A/B), Schedule D (Creditors Who Have Claims Secured By Property) (Official Form 106D), Schedule E/F (Creditors Who Have Unsecured Claims) (Official Form 106E/F), Schedule I (Your Income) (Official Form 106I), Schedule J (Your Expenses) (Official Form 106J), List of Creditors and a Certificate of

Credit Counseling.  ECF Nos. 1, 4.

*This Motion for Nunc Pro Tunc or Retroactive Stay Relief*

On May 22, 2024, Hart Road filed this Verified Motion for Relief from the Automatic Stay Nunc Pro Tunc to Allow the Sale of the Property or Alternatively Dismissing the Debtor's Chapter 13 Bankruptcy Case Nunc Pro Tunc or with Prejudice to Refiling to Allow the Sale of the Property.  In this Motion, Hart Road seeks *nunc pro tunc* or retroactive relief from the automatic stay, or alternatively, dismissal of Mr. Crichlow's bankruptcy case, effective as of the Petition Date.  That is, in substance, Hart Road seeks an order providing that, as to its actions with respect to the Putnam Avenue Property, any protection of the automatic stay that was triggered is annulled, so that its auction sale of the Property is validated.

In the Stay Relief Motion, Hart Road seeks *nunc pro tunc* or retroactive relief from the automatic stay for several reasons.  It states that it "did not know about the filing [of this bankruptcy case] until after the gavel came down at the sale."  Stay Relief Mot. ¶ 32.

Hart Road also states that after this bankruptcy case was filed, Mr. Crichlow participated in the Partition Action relating to the Putnam Avenue Property in New York State Court by "provid[ing] a Notice to Hart's attorney on May 1, 2024 that he would appear in State Court on May 2, 2024 . . . to file an Order to Show Cause requesting a stay of the Auction."  Stay Relief Mot. ¶ 22.  In that regard, Hart Road notes that Mr. Crichlow "participated in the state court proceeding and failed to inform the state court, [Hart Road] or the Referee regarding the second bankruptcy."  Stay Relief Mot. ¶ 35.  It explains:

> [Mr. Crichlow] did not only fail to inform Hart of the Second Filing – [he] purposely mislead Hart.  [Mr. Crichlow] provided a Notice to [Hart Road]'s attorney on May 1, 2024 that he would appear in State Court on May 2, 2024 (which was after his second bankruptcy case was filed), to file an Order to Show Cause requesting a stay of the Auction.  As a result of this Notice, [Hart Road]'s State Court attorney spent approximately 5 hours in the courthouse waiting for

4

[Mr. Crichlow] to file the Order to Show Cause, so as to oppose same, but [he] never appeared.

Stay Relief Mot. ¶ 22.

And Hart Road contends that grounds for annulment of the stay exist here. It asserts that, just as occurred in Mr. Crichlow's January 2024 Bankruptcy Case, relief from the automatic stay would have been granted in this bankruptcy case if it had been requested in advance of the New York State Court auction in the Partition Action.[1]

On May 31, 2024, the Court held an initial conference on the Stay Relief Motion, at which Mr. Crichlow, *pro se*, and Hart Road appeared and were heard. The Court directed Mr. Crichlow to file a notice of appearance of counsel within two weeks, by June 14, 2024, and set a continued hearing on the Motion for June 18, 2024. But on that date, Mr. Crichlow did not appear. Soon thereafter, on June 26, 2024, the Court entered an order to show cause why the Motion should not be granted and stay relief granted effective as of the Petition Date. ECF No. 22.

Next, on July 2, 2024, the Court held a continued hearing on the Motion, at which Hart Road appeared and was heard, and Mr. Crichlow did not appear. As reflected in the record of that hearing, the Court noted the absence of opposition and granted Hart Road's Motion for stay

---

[1] Hart Road also makes an argument that the automatic stay should be modified for cause under Bankruptcy Code Section 362(d)(1), because it lacks "adequate protection against the accumulation of liens, interest, and charges against the [Putnam Avenue] Property", and because Mr. Crichlow "has not commenced adequate protection payments." Stay Relief Mot. ¶ 36. But outside of a brief argument set forth in a single paragraph, this request for relief is not presented or addressed in Hart Road's Motion, and the Court does not consider it here.

Hart Road also argues, in the alternative, that Mr. Crichlow's Chapter 13 bankruptcy case should be dismissed *nunc pro tunc* to the Petition Date, pursuant to Bankruptcy Code Sections 1307(c), 105(a), 109(g), and 521(i)(2). Because this Court denies Hart Road's request for the lesser remedy of *nunc pro tunc* or retroactive relief from the automatic stay, it does not consider the request for *nunc pro tunc* dismissal here.

relief retroactive to the Petition Date and directed Hart Road to submit a proposed order for the Court's review.

But a motion is not decided until an order is entered. As Bankruptcy Rule 9021 states, "[a] judgment or order is effective when entered." Fed. R. Bankr. P. 9021. And here, upon further review of the record, the Court concluded that it was far from clear that Mr. Crichlow had proceeded in bad faith here. Hart Road's Motion and the Court's Order to Show Cause were restored to the calendar, and a conference was scheduled for September 16, 2024. At that hearing, Hart Road appeared, and Mr. Crichlow did not appear. The Court directed the parties to confer on the status of the sale of the Putnam Avenue Property and to file a status letter by September 30, 2024. But a status letter was not filed by that date, and as of the date of this Memorandum Decision, no status letter has been filed, and the record is now closed.

## Jurisdiction

This Court has jurisdiction over this Stay Relief Motion pursuant to Judiciary Code Sections 157 and 1334, and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York. This is a core proceeding pursuant to Judiciary Code Section 157(b)(2)(G). Venue is proper in this Court pursuant to Judiciary Code Sections 1408 and 1409.

## Discussion

This Court often considers whether it is appropriate to modify the automatic stay, pursuant to Bankruptcy Code Section 362(d). This question arises frequently, and the standards for stay relief under Sections 362(d)(1) and 362(d)(2) are well established. But this Motion calls for the Court to consider a related but different question, whether the far more unusual relief of *nunc pro tunc* or retroactive relief is warranted here, and what criteria should guide a

determination of a request for that relief.

*The Applicable Legal Standards – Relief from the Automatic Stay*

The starting point for considering a request for retroactive stay relief is the role of the automatic stay in a bankruptcy case. When a bankruptcy petition is filed, Bankruptcy Code Section 362 causes an automatic stay to be imposed, and the protection of the automatic stay is broad indeed. It protects the property of the debtor's estate from actions by a creditor to collect on a debt, including repossession and foreclosure. Section 362(a)(3) provides that the filing of a bankruptcy petition "operates as a stay" of "any act . . . to exercise control over property of the [bankruptcy] estate." 11 U.S.C. § 362(a)(3). "Indeed, so central is the § 362 stay to an orderly bankruptcy process that '"actions taken in violation of the stay are void and without effect."'" *Fed. Deposit Ins. Corp. v. Hirsch* (*In re Colonial Realty Co.*), 980 F.2d 125, 137 (2d Cir. 1992) (quoting *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc.* (*In re 48th St. Steakhouse, Inc.*), 835 F.2d 427, 431 (2d Cir. 1987) (quoting 2 Lawrence P. King, *Collier on Bankruptcy* § 362.11 (15th ed. 1987)), *cert. denied*, 485 U.S. 1035 (1988)).

The automatic stay is often viewed as a protection for debtors – and to be sure, it gives the debtor a breathing space following the filing of a bankruptcy case. As the Supreme Court has noted, it "has been described as 'one of the fundamental debtor protections provided by the bankruptcy laws.'" *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986) (quoting S. Rep. No. 95-989, p. 54 (1978); H. Rep. No. 95-595, p. 340 (1977)). It also protects the interests of creditors by halting, at least temporarily, the "race to the courthouse" to collect on a debt. *United States v. Nicolet, Inc.*, 857 F.2d 202, 207 (3d Cir. 1988). As the Third Circuit has noted, "[i]n addition to providing the debtor with a 'breathing spell,' the stay is intended to replace an unfair race to the courthouse with an orderly . . . procedure designed to treat all

creditors equally." *Id*.

And courts recognize that for the bankruptcy system to function, the automatic stay must be respected by creditors and courts. As the First Circuit observed, "'[t]he dead tree gives no shelter.' T.S. Eliot, *The Waste Land, I, The Burial of the Dead* (1922). Like a shade tree, the automatic stay which attends the initiation of bankruptcy proceedings . . . must be nurtured if it is to retain its vitality." *Soares v. Brockton Credit Union* (*In re Soares*), 107 F.3d 969, 971 (1st Cir. 1997) (quoting 11 U.S.C. § 362(d)).

Just as the Bankruptcy Code provides for the stay promptly to come into effect, it also provides a path for a creditor or other party in interest to seek relief or modification of the automatic stay. The stay may be modified "for cause" under Section 362(d) by court order. As the Second Circuit has explained, "[t]he Bankruptcy Code empowers bankruptcy courts to take measures that grant relief from the automatic stay, including 'terminating, annulling, modifying, or conditioning' the stay, under certain circumstances." *E. Refractories Co. v. Forty Eight Insulations Inc*., 157 F.3d 169, 172 (2d Cir. 1998) (internal citations omitted).

As the Second Circuit explained more than three decades ago, "[t]he burden of proof on a motion to lift or modify the automatic stay is a shifting one. Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues other than 'the debtor's equity in property.'" *In re Sonnax Indus*., 907 F.2d 1280, 1285 (2d Cir. 1990) (quoting 11 U.S.C. § 362(g)(1)). And as the noted Collier on Bankruptcy treatise observes, Section 362(d) "provides that the court 'shall' grant relief, for example, by terminating, annulling, modifying or conditioning the stay for cause, including the lack of adequate protection of an interest in property." 3 *Collier on Bankruptcy* ¶ 362.07 (16th ed. 2024) (Richard Levin & Henry J. Sommer eds.) (quotation marks omitted).

One path to stay relief is "cause," and courts may examine several factors to determine whether "cause" exists to lift the automatic stay when another proceeding is pending, often referred to as the *Sonnax* factors.  These are:

(1)    whether relief would result in a partial or complete resolution of the issues;

(2)    lack of any connection with or interference with the bankruptcy case;

(3)    whether the other proceeding involves the debtor as a fiduciary;

(4)    whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5)    whether the debtor's insurer has assumed full responsibility for defending it;

(6)    whether the action primarily involves third parties;

(7)    whether litigation in another forum would prejudice the interests of other creditors;

(8)    whether the judgment claim arising from the other action is subject to equitable subordination;

(9)    whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10)   the interests of judicial economy and the expeditious and economical resolution of litigation;

(11)   whether the parties are ready for trial in the other proceeding; and

(12)   impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus.*, 907 F.2d at 1286.  "Not all of these factors will be relevant in every case."

*Mazzeo v. Lenhart* (*In re Mazzeo*), 167 F.3d 139, 143 (2d Cir. 1999).

### *The Applicable Legal Standards – Nunc pro Tunc or Retroactive Relief from the Automatic Stay*

Courts draw a distinction between different kinds of relief from the automatic stay, including prospective relief and *nunc pro tunc* or retroactive relief such as annulment that may,

in the appropriate circumstances, be imposed effective as of the date of filing of the bankruptcy case. Retroactive relief is rare. As the First Circuit noted, "bankruptcy courts ordinarily must hold those who defile the automatic stay to the predictable consequences of their actions and can grant retroactive relief only sparingly and in compelling circumstances." *In re Soares*, 107 F.3d at 978.

And as the Second Circuit has explained:

> These measures have different operation and effect. An order "terminating" an automatic stay operates only from the date of entry of the order. Such an order thus permits a creditor to re-initiate its lawsuit (or start another one) *after* the termination order is entered but does not affect the status of actions taken between the filing of the bankruptcy petition and the entry of the termination order – such actions are void *ab initio*. By contrast, an order "annulling" a stay does have retroactive effect, and thereby reaches back in time to validate proceedings or actions that would otherwise be deemed void *ab initio*.

*E. Refractories Co.*, 157 F.3d at 172 (citations omitted).

In the Second Circuit, and in the absence of relief to the contrary, actions taken in violation of the stay are void from the outset. *E. Refractories Co.*, 157 F.3d at 172. *See In re 48th St. Steakhouse, Inc.*, 835 F.2d at 431 (stating that "'actions taken in violation of the stay are void and without effect'" (quoting 2 Lawrence P. King, *Collier on Bankruptcy* § 362.11 (15th ed. 1987))).

This rule means that the party that has acted in contravention of the automatic stay bears the burden of validating that action retroactively. As the First Circuit explained:

> Treating an action taken in contravention of the automatic stay as void places the burden of validating the action after the fact squarely on the shoulders of the offending creditor. In contrast, treating an action taken in contravention of the automatic stay as voidable places the burden of challenging the action on the offended debtor.

*In re Soares*, 107 F.3d at 976.

But this does not mean that a creditor that has run afoul of the automatic stay has no

options.  As one bankruptcy court within the Second Circuit has observed:

> [Section] 362(d) expressly grants bankruptcy courts the option, in fashioning appropriate relief, of "annulling" the automatic stay.  The word "annulling" in this provision evidently contemplates the power of bankruptcy courts to grant relief from the stay which has retroactive effect.  [Section] 362(d) permits bankruptcy courts, in appropriately *limited* circumstances, to grant retroactive relief from the automatic stay.

*Govola v. Murphy* (*In re Govola*), 306 B.R. 733, 737 (Bankr. D. Conn. 2004) (footnote, quotation marks, and alterations omitted).

So how should a bankruptcy court determine whether the high standard for annulling the automatic stay has been met?  Courts in the Second Circuit often look to several factors cited by the bankruptcy court in *In re Stockwell*, 262 B.R. 275 (Bankr. D. Vt. 2001), in considering a request for retroactive stay relief.  These are:

> "(1)   if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay;
>
> "(2)   if the debtor has acted in bad faith;
>
> "(3)   if there was equity in the property of the estate;
>
> "(4)   if the property was necessary for an effective reorganization;
>
> "(5)   if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation;
>
> "(6)   if failure to grant retroactive relief would cause unnecessary expense to the creditor; and
>
> "(7)   if the creditor has detrimentally changed its position on the basis of the action taken."

*In re Stockwell*, 262 B.R. at 281 (quoting *First American Title Ins. Co. v. Lett* (*In re Lett*), 238 B.R. 167, 195 (Bankr. W.D. Mo. 1999)).  *See In re Uchitel*, 2022 WL 3134217, at *4 (Bankr. S.D.N.Y. Aug. 4, 2022) (quoting *In re Stockwell*, 262 B.R. at 281; *Garcia v. Sklar* (*In re Sklar*), 626 B.R. 750, 763 (Bankr. S.D.N.Y. 2021) (citing *In re Stockwell*, 262 B.R. at 281; *In re Jean-*

*Francois*, 516 B.R. 699, 704 (E.D.N.Y. 2014) (explaining that "[c]ourts within this Circuit have relied on the *Stockwell* factors to determine whether to annul the automatic stay.").

At the same time, a determination to annul the automatic stay is inherently tied to the facts and circumstances of the particular situation.  That is, "[e]ach case is sui generis and must be judged accordingly." *In re Soares*, 107 F.3d at 977.  Still, some guideposts can be identified: "[w]hen a creditor inadvertently violates the automatic stay in ignorance of a pending bankruptcy, courts sometimes have afforded retroactive relief. . . . By like token, debtors who act in bad faith may create situations that are ripe for retroactive relief." *In re Soares*, 107 F.3d at 977 (internal citations omitted).

Put another way, while many criteria are relevant to a determination whether to grant stay relief with retroactive effect, the central considerations are whether the creditor knowingly acted in violation of the automatic stay, and whether the debtor acted in bad faith.  If these criteria are not present, it is not likely that *nunc pro tunc* or retroactive stay relief will be warranted.

Courts agree that "[t]he party seeking retroactive stay relief has the burden to make a *prima facie* showing of cause." *In re Uchitel*, 2022 WL 3134217, at *10.  *See In re WorldCom, Inc.*, 325 B.R. 511, 521 (Bankr. S.D.N.Y. 2005) (observing that "[t]he party moving for the retroactive lifting of the stay has the burden to make a prima facie showing of cause for relief").  And courts have wisely cautioned that "a request for retroactive relief from the automatic stay should be granted sparingly." *Chimera Capital, L.P. v. Nisselson* (*In re Marketxt*), 428 B.R. 579, 585 (S.D.N.Y. 2010).  As one bankruptcy court in the Second Circuit observed:

> "If retroactive relief becomes commonplace, creditors – anticipating *post facto* validation – will be tempted to pursue claims against bankrupts heedless of the stay, leaving debtors with no choice but to defend for fear that post-petition default judgments routinely may be resuscitated."  . . . Accordingly, "retroactive relief should be the long-odds exception, not the general rule."

*In re Sklar*, 626 B.R. at 763 (quoting *In re Soares*, 107 F.3d at 977) (citation omitted).

And finally, "the determination as to whether the automatic stay should be annulled *nunc pro tunc*" or retroactively "is left to the discretion of the courts, who are advised to adopt a holistic approach, where the facts of each [case] will determine whether relief is appropriate under the circumstances." *In re Thomas*, 639 B.R. 285, 293 (Bankr. S.D.N.Y. 2022) (quotation marks omitted).

### *Whether Hart Road Has Shown that It Is Entitled to Nunc pro Tunc or Retroactive Relief from the Automatic Stay*

The Court turns to the question of whether Hart Road is entitled to *nunc pro tunc* or retroactive relief from the automatic stay.  As noted above, this relief is not the norm, and "retroactive relief should be the long-odds exception, not the general rule."  *In re Soares*, 107 F.3d at 977.

Courts in this Circuit look to seven factors identified by the bankruptcy court in *In re Stockwell* in assessing whether *nunc pro tunc* or retroactive relief from the automatic stay is warranted.  These are:

(1)   if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay;

(2)   if the debtor has acted in bad faith;

(3)   if there was equity in the property of the estate;

(4)   if the property was necessary for an effective reorganization;

(5)   if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation;

(6)   if failure to grant retroactive relief would cause unnecessary expense to the creditor; and

(7)   if the creditor has detrimentally changed its position on the basis of the action taken.

*In re Stockwell*, 262 B.R. at 281 (quotation marks omitted).  And notably, "[t]he fifth *Stockwell* Factor requires evaluation of the *Sonnax* Factors."  *In re Sklar*, 626 B.R. at 763.  The Court considers these factors in turn.

> *Stockwell Factor 1: Whether Hart Road had actual or constructive knowledge of the bankruptcy filing and the automatic stay.*

The first factor that the Court considers is whether, at the time of the sale of the Putnam Avenue Property, Hart Road knew of Mr. Crichlow's bankruptcy filing and the triggering of the automatic stay.  Hart Road states that at the time of the sale of the Putnam Avenue Property, it had no actual or constructive knowledge of this bankruptcy case.  Specifically, Hart Road states that it "did not know about the filing [of this bankruptcy case] until after the gavel came down at the sale [held on May 2, 2024]" more than "two weeks after the auction (16 days post filing), when a title search discovered same."  Stay Relief Mot. ¶ 32.

At the same time, here, the record shows that on April 29, 2024, Mr. Crichlow filed a list of creditors or creditor matrix together with his petition, and this list of creditors includes Hart Road, both at its business address and in care of its counsel, Howard Lefkowitz, Esq.  ECF No. 1.  The record also shows that two days later, on May 1, 2024, the Bankruptcy Noticing Center ("BNC") sent a Notice of Chapter 13 Bankruptcy Case to Mr. Crichlow, the Chapter 13 Trustee, and the United States Trustee.  ECF No. 6.  And that Notice, due to apparent administrative errors, misspelled Mr. Crichlow's last name and omitted the addresses of the creditors that Mr. Crichlow listed in his creditor matrix.  *Id*.

And the record shows that one day after that, on May 2, 2024 – the day of the auction sale at issue here – BNC sent a new Notice of Chapter 13 Bankruptcy Case by first class mail to Mr. Crichlow, Hart Road and its counsel Mr. Lefkowitz, and the New York City Water Board,

and by electronic transmission to the Chapter 13 Trustee, the United States Trustee, and several creditors. ECF No. 7. That is, consistent with Hart Road's position, here, the record shows that Hart Road or its counsel could not somehow have received the BNC Notice of Chapter 13 Bankruptcy Case in advance of the auction sale of the Putnam Avenue Property, which was held on the same day that the notice was mailed by BNC.

Hart Road also argues that Mr. Crichlow had the opportunity directly to apprise it and the New York State Court of his filing of this bankruptcy case when he "provided a Notice to [Hart Road]'s attorney on May 1, 2024, that he would appear in State Court on May 2, 2024 . . . to file an Order to Show Cause requesting a stay of the Auction," but did not inform Hart Road that he had commenced this case. Stay Relief Mot. ¶ 22. And Hart Road's "State Court attorney spent approximately 5 hours in the courthouse waiting for [Mr. Crichlow] to file the Order to Show Cause," but he never did so. *Id.* So for these reasons as well, Hart Road states that it did not have actual or constructive notice of Mr. Crichlow's bankruptcy filing and the automatic stay.

To be sure, there is another side to the story of whether Hart Road had, or *could have had*, actual notice of the filing of this bankruptcy case. The filing of a bankruptcy case is a matter of public record. The Court's records show that Mr. Crichlow filed this bankruptcy case on April 29, 2024, at 4:17 P.M., and that the bankruptcy petition was docketed at 4:35 PM – or more than two business days before the sale of the Putnam Avenue Property occurred. *See* ECF No. 1. Plainly, this could have been discerned by Hart Road by a review of this Court's electronic records – and this would be a good practice for a prudent creditor to follow.

In addressing a similar request for relief, one district court observed that the creditor "could not have been expected to monitor constantly the PACER system for the filing of the bankruptcy petition." *In re Jean-Francois*, 516 B.R. at 704. Notably, in that case, the court also

found that the creditor "asserted before the Bankruptcy Court that it checked the PACER system when it received the letter from Debtor-Appellant and again on the morning of the foreclosure sale." *Id*. And it did not find an indication of the bankruptcy filing, because "the actual bankruptcy petition was not filed until twenty minutes prior to the foreclosure sale." *Id*. Here, by contrast, Hart Road has not argued that it took steps, such as checking this Court's PACER electronic case filing system, to ascertain whether a new bankruptcy case had been filed.

But this first *Stockwell* factor does not call for the Court to determine whether a creditor took every possible step, up until the last minute, to confirm the absence of a bankruptcy case filing and the triggering of the automatic stay. That kind of diligence might make business and commercial sense, but it is not required. Instead, the Court considers the entire record to determine whether the moving creditor had actual or constructive notice of the bankruptcy case and the automatic stay. The question of constructive notice permits the Court to consider all the pertinent facts and circumstances, including the creditor's diligence, among other considerations.

And here, the record shows that the uncontroverted evidence supports the conclusion that Hart Road did not have actual or constructive notice of Mr. Crichlow's filing of this bankruptcy case. Mr. Crichlow did not provide that notice, even though he appears to have been in contact with Hart Road's counsel after this case was filed and before the auction was scheduled to occur. The BNC notice to creditors, including Hart Road, of the filing of this bankruptcy case was delayed, due to errors and omissions in the initial version of that notice. To be sure, Hart Road could have checked for itself to confirm whether a second bankruptcy case had been filed – and in view of the history of litigation between the parties, that inquiry could well have made sense. But a long history of litigation in New York State Court and a recent bankruptcy filing does not add up to constructive notice that a bankruptcy case has been filed.

As a consequence, the Court finds and concludes that the first *Stockwell* factor, whether Hart Road had actual or constructive knowledge of the filing of this bankruptcy case, weighs modestly in favor of retroactive relief from the automatic stay.

*Stockwell Factor 2: Whether Mr. Crichlow has acted in bad faith.*

The next factor that the Court considers is whether Mr. Crichlow acted in bad faith. As the court explained in *In re Stockwell*, "a debtor may not remain 'stealthily silent' while a creditor unknowingly violates the automatic stay in order to reap strategic or monetary advantage." *In re Stockwell*, 262 B.R. at 281. And a debtor's lack of good faith may be indicated by a failure to "'mitigat[e] any damages with regard to a creditor's violation of the automatic stay.'" *In re Jean-Francois*, 516 B.R. at 704 (quoting *In re Stockwell*, 262 B.R. at 281).

At the same time, in *In re Stockwell*, the court specifically declined to find that the debtors there "had an affirmative duty to notify or remind a known creditor of the pendency of a bankruptcy proceeding." *In re Stockwell*, 262 B.R. at 281. Instead, the bankruptcy court observed, "a debtor is under a duty to exercise due diligence in protecting and pursuing his or her rights and in mitigating any damages with regard to a creditor's violation of the automatic stay." *Id*. But the court stopped short of concluding that the debtors there acted in bad faith by remaining "silent" during foreclosure proceedings where the record showed that the "parties . . . simply failed to communicate adequately with each other, the Bankruptcy Court Clerk's Office, their counsel or their business affiliates in order to avert an unwitting violation of the automatic stay." *In re Stockwell*, 262 B.R. at 281-82.

Here, the record shows that Mr. Crichlow filed this bankruptcy case on April 29, 2024, the same day that his first bankruptcy case was dismissed. He included Hart Road on the

creditor matrix that he filed contemporaneously with the petition, both at its business address and in care of its counsel, Mr. Lefkowitz. ECF No. 1. By including Hart Road in his list of creditors as required by Bankruptcy Code Section 521(a)(1), on the date that this bankruptcy case was filed, Mr. Crichlow complied with one of the most basic obligations ascribed to a debtor by the Bankruptcy Code – to provide the information necessary to alert his creditors, including Hart Road, that this bankruptcy case had commenced.

The record also shows that on May 1, 2024, the Clerk of Court filed a BNC Certificate of Mailing of the Meeting of Creditors Notice Date, in which Mr. Crichlow's last name was misspelled and the addresses of the creditors that Mr. Crichlow listed in his creditor matrix were not included. ECF No. 6. These errors were corrected promptly, and just one day later, on May 2, 2024, the Clerk of Court filed an amended BNC Certificate of Mailing of the Meeting of Creditors Notice Date. ECF No. 7. And this shows that a notice of the filing of this bankruptcy case was sent to Hart Road and its counsel Mr. Lefkowitz by first class mail on May 2, 2024. *Id.*

Hart Road argues that Mr. Crichlow acted in bad faith in at least two ways – first, on April 29, 2024, by filing this bankruptcy case just three days before the scheduled sale of the Putnam Avenue Property; and second, on May 1, 2024, by providing Hart Road with a "Notice" that he would file an application for an order to show cause in New York State Court seeking a stay of the auction of the Putnam Avenue Property, and then not doing so. Stay Relief Mot. ¶ 22. And Hart Road asserts that by doing so, Mr. Crichlow "participated in the [Partition Action]" and did not inform the New York State Court, Hart Road, or the court-appointed referee of the filing of this bankruptcy case – and consequently, that he acted in bad faith. Stay Relief Mot. ¶ 35.

Here, the starting point for the Court's consideration of whether Mr. Crichlow acted in

bad faith is what the record shows as to his conduct in this bankruptcy case. To be sure, he commenced this case just three days before a scheduled sale of the Putnam Avenue Property. But this timing, standing alone, does not amount to bad faith. Indeed, many bankruptcy cases of both individuals and businesses, with and without counsel, are filed in close proximity to a sale or other event. As one bankruptcy court observed, "[t]he stay is of broad scope and is a tool frequently used in individual bankruptcies to stay foreclosure proceedings and allow the Debtor an opportunity to reorganize . . . [and] '[b]are-bones' petitions are frequently filed in order to stop foreclosure sales." *In re Procel*, 652 B.R. 577, 582 (Bankr. S.D.N.Y. 2023) (footnote omitted).[2] And here, the record shows that Mr. Crichlow's bankruptcy filing was substantially complete, and far from the "bare bones" type of filing that might signal an absence of good faith.

In addition, here the record shows that Mr. Crichlow included Hart Road, both at its business address and in care of its counsel, Mr. Lefkowitz, on his list of creditors or creditor matrix that he filed with his bankruptcy petition. That is, he did what the Bankruptcy Code requires him to do. To be sure, Mr. Crichlow could have done more. Perhaps he could have gone a step further to notify Hart Road of the filing of this case. Courts have acknowledged that "'a debtor is under a duty to exercise due diligence in protecting and pursuing his or her rights and in mitigating any damages with regard to a creditor's violation of the automatic stay.'" *In re Jean-Francois*, 516 B.R. at 704 (quoting *In re Stockwell*, 262 B.R. at 281).

But requiring a debtor, and a *pro se* debtor at that, to provide notice to a creditor beyond

---

[2] *In re Procel* is instructive in at least one additional way. There, the court determined that it was appropriate to revisit an initial determination on a motion, based on further review of the record and attendant circumstances. And there, the debtor was *pro se*, proceeding without the aid of counsel. Based on a further review of the record, the court concluded that it was appropriate to reach a different conclusion and to "alter[] its prior judgment." *In re Procel*, 652 B.R. at 583. And so here.

what is required by the Bankruptcy Code is more than this Court is prepared to do. Mr. Crichlow's failure to provide Hart Road with additional notice beyond complying with his obligations pursuant to Bankruptcy Code Section 521(a)(1) does not rise to the level of bad faith or indicate that Mr. Crichlow remained "stealthily silent" when he filed this bankruptcy case. *In re Stockwell*, 262 B.R. at 281. Here, as in *In re Stockwell*, the Court declines to impose "an affirmative duty to notify . . . a known creditor of the pendency of a bankruptcy proceeding." *Id*.

The Court also is not persuaded that by providing "a Notice" of his intent to seek the entry of an order to show cause in the Partition Action on May 1, 2024, the day before the scheduled auction sale, Mr. Crichlow "participated" in any meaningful way in the New York State Court proceedings then. Stay Relief Mot. ¶ 22.

Here, as in *In re Stockwell*, the Court finds instead that it "is confronted with parties who it finds simply failed to communicate adequately with each other [and] the Bankruptcy Court Clerk's Office . . . to avert an unwitting violation of the automatic stay." *In re Stockwell*, 262 B.R. at 281-82. And that led to the auction sale of the Putnam Avenue Property.

As a consequence, the Court finds and concludes that the second *Stockwell* factor, whether Mr. Crichlow has acted in bad faith, weighs against retroactive relief from the automatic stay.

### *Stockwell Factor 3: Whether Mr. Crichlow has equity in the Putnam Avenue Property.*

The third factor that the Court considers is whether Mr. Crichlow has equity in the Putnam Avenue Property. Whether the question is prospective or *nunc pro tunc* stay relief, the presence of equity suggests the prospect of value and a recovery for other creditors and the debtor, while the absence of equity points in the opposite direction.

Here, the record shows that Hart Road and Mr. Crichlow do not dispute that Mr.

Crichlow has equity in the Putnam Avenue Property. Hart Road states that "the Debtor has equity in the Property which will be preserved in the state court sale." Stay Relief Mot. ¶ 32. And Mr. Crichlow's bankruptcy schedules support this position. He identifies the value of the Putnam Avenue Property as $1,422,100, and his ownership interest as $426,630. *See* ECF No. 1. He lists Hart Road as his only secured creditor, with a claim of $0.[3] *Id.*

As a consequence, the Court finds and concludes that the third *Stockwell* factor, whether Mr. Crichlow has equity in the Putnam Avenue Property, weighs against retroactive relief from the automatic stay.

### *Stockwell Factor 4: Whether the property was necessary for an effective reorganization.*

The fourth factor that the Court considers is whether the Putnam Avenue Property was necessary for an effective reorganization. The starting point for considering this factor is whether the bankruptcy case is a Chapter 7 liquidation case, or a Chapter 11 or 13 reorganization case. And here, of course, Mr. Crichlow has opted to file a Chapter 13 bankruptcy case, in which he could address his debts through a Chapter 13 plan over a period of up to five years.

But not every Chapter 11 or 13 case will satisfy this threshold requirement. Instead, courts agree that the property at issue must be "'essential for an effective reorganization *that is in prospect.*'" *In re Mitrany*, 2008 WL 2128162, at *4 (Bankr. E.D.N.Y. May 16, 2008) (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 375-76 (1988))

Here, the record shows that, unfortunately, "an effective reorganization" is not "in prospect." Mr. Crichlow has not filed all of the schedules and statements that are required for his

---

[3] Here and in the January 2024 Case, Mr. Crichlow lists Hart Road as a secured creditor. *See* ECF No. 1; *In re Crichlow*, Case No. 24-40037, ECF No. 1. It appears from the record that Hart Road may be a co-owner of the Putnam Avenue Property, not a secured creditor with respect to that property. *See* Stay Relief Mot. ¶ 12 (stating "Hart Road . . . is not a creditor-as it is owed no money by the Debtor"); Stay Relief Mot. ¶ 15 (stating "[Hart Road] is not a creditor").

case to proceed, nor has he filed a Chapter 13 Plan or begun to make plan payments to the

Chapter 13 Trustee.  And indeed, this Court has entered an order to show cause why this

bankruptcy case should not be dismissed based on these deficiencies, and the Chapter 13 Trustee

has filed a motion to dismiss Mr. Crichlow's case as well.  ECF Nos. 20, 17.

As a consequence, the Court finds and concludes that the fourth *Stockwell* factor, whether

the Putnam Avenue Property was necessary for an effective reorganization, weighs neither for

nor against retroactive relief from the automatic stay.

*Stockwell Factor 5: Whether grounds for relief from the stay existed and a motion, if filed*
*would likely have been granted prior to the automatic stay violation.*

The fifth factor that the Court considers is whether grounds for stay relief were present,

and a motion for stay relief would likely have been granted, before the stay violation occurred.

At the outset, the Court notes that in the January 2024 Case, Mr. Crichlow, by his

counsel, responded to Hart Road's motion for stay relief on February 26, 2024, by letter stating,

in part, that "the Debtor can offer no substantive opposition to the [Movant's] Motion [for stay

relief]." *In re Crichlow*, Case No. 24-40037, ECF No. 15.  And on March 12, 2024, the Court

entered an Order granting Hart Road's stay relief motion.  That Order states, in part, that "the

automatic stay is modified to permit [the Movant] to pursue its rights under applicable law with

respect to the [Putnam Avenue Property]."  *In re Crichlow*, Case No. 24-40037, ECF No. 16.

Following the entry of that Order, in the January 2024 Case and also in this case, the record does

not show, or even suggest, that there are any changed circumstances that would alter the grounds

for Mr. Crichlow's statement there, or the appropriateness of stay relief.

Nevertheless, it is appropriate to consider this factor, and here, this calls for an

assessment of the *Sonnax* factors.  *In re Sklar*, 626 B.R. at 763.  The *Sonnax* factors are:

(1)    whether relief would result in a partial or complete resolution of the issues;

(2)    lack of any connection with or interference with the bankruptcy case;

(3)    whether the other proceeding involves the debtor as a fiduciary;

(4)    whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5)    whether the debtor's insurer has assumed full responsibility for defending it;

(6)    whether the action primarily involves third parties;

(7)    whether litigation in another forum would prejudice the interests of other creditors;

(8)    whether the judgment claim arising from the other action is subject to equitable subordination;

(9)    whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10)    the interests of judicial economy and the expeditious and economical resolution of litigation;

(11)    whether the parties are ready for trial in the other proceeding; and

(12)    impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus.*, 907 F.2d at 1286.

Courts agree that "[o]nly those factors relevant to a particular case need be considered." *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994). And here, it is evident from the record that several of the *Sonnax* factors have particular salience here.

As to the first *Sonnax* factor, whether relief would result in a partial or complete resolution of the issues, here, the record shows that if Hart Road had sought relief from the automatic stay prior to the sale of the Putnam Avenue Property in the Partition Action, that would have led to a complete resolution of the issues, namely the sale in lieu of partition of the Putnam Avenue Property that was ordered by the New York State Court. Accordingly, the first

*Sonnax* factor would weigh in favor of stay relief.

As to the second *Sonnax* factor, the lack of any connection with or interference with this bankruptcy case, here, the record shows that the sale of the Putnam Avenue Property could have proceeded without interfering with the administration of Mr. Crichlow's bankruptcy case. To be sure, it appears that he filed this case in an effort to stay that sale – but the sale had been ordered by the New York State Court, and it appears likely that the sale would yield a surplus to Mr. Crichlow, for the benefit of both him and his creditors. Accordingly, the second *Sonnax* factor would weigh in favor of stay relief.

As to the fourth *Sonnax* factor, whether a specialized tribunal with the necessary expertise has been established to hear the cause of action, here, the record shows that the New York State Court is plainly a tribunal with the necessary expertise to hear the Partition Action. New York state law is the applicable law, and matters of this nature are routinely and frequently heard in these courts. It also shows that the Partition Action has been pending there for some five years, since 2019. Accordingly, the fourth *Sonnax* factor would weigh in favor of stay relief.

As to the sixth *Sonnax* factor, whether the action primarily involves third parties, here, the record shows that the Partition Action involves Mr. Crichlow, who claims a thirty percent interest in the Putnam Avenue Property on the one hand, and several additional co-owners of the remaining seventy percent interest in the property. That is, here, the record is mixed, because of course, Mr. Crichlow is not a third party to his own bankruptcy case. But that does not distinguish this situation from most situations where stay relief is sought to continue an action against a debtor. At the same time, a majority of the parties in the Partition Action, who hold a majority interest in the Putnam Avenue Property, are third parties. Accordingly, the sixth

24

*Sonnax* factor would weigh in favor of stay relief.

As to the tenth *Sonnax* factor, the interests of judicial economy and the expeditious and economical resolution of litigation, here, the record shows that the interests of judicial economy would support stay relief in these circumstances.  The Partition Action had been pending in New York State Court for some five years when this bankruptcy case was filed.  That court had considered the record in the Partition Action, and determined that a sale in lieu of partition was appropriate, and it had entered an order to that effect.  And of course, it would be neither appropriate nor permitted for this Court to revisit or second-guess the judgment of the New York State Court.  As the Second Circuit has noted, "[w]here claims raised in a federal action are 'inextricably intertwined' with a state court's determination, dismissal of the federal claims for lack of jurisdiction pursuant to *Rooker-Feldman* is proper."  *Botsas v. United States*, 5 F. App'x 69, 70 (2d Cir. 2001).  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  Accordingly, the tenth *Sonnax* factor would weigh in favor of stay relief.

As to the eleventh *Sonnax* factor, the parties' readiness for trial in the other proceeding, here, the record shows that the Partition Action had already progressed to the entry of judgment. That is, the parties have completed the work of litigating that matter in New York State Court, and that court has entered a judgment.  Accordingly, the eleventh *Sonnax* factor would weigh in favor of stay relief.

Finally, as to the twelfth *Sonnax* factor, the impact of the stay on the parties and the balance of harms, it appears from the record that Mr. Crichlow may well have filed this case with the goal of reaching a consensual resolution with the co-owners of the Putnam Avenue Property, and to that end, staying the imminent sale of the property in the Partition Action.  And Hart Road

25

seeks *nunc pro tunc* or retroactive stay relief in order to be able to complete the sale that finally occurred, after many years of litigation in the Partition Action in New York State Court.  In that action, both Mr. Crichlow and Hart Road were represented by counsel, and the court concluded that a sale in lieu of partition was appropriate.  And Mr. Crichlow stands to receive a substantial sum upon the completion of the sale.

To be sure, the Court recognizes that the Putnam Avenue Property is Mr. Crichlow's home.  And the sale of his home is surely a great burden to him.  But as one bankruptcy court observed, while the sale of a home and even "[h]omelessness is a significant harm to the Debtor, . . .  the [Debtor] is without a concrete legal argument for allowing the Debtor. . .  to remain in possession of the property." *In re Otway*, 2022 WL 4668557, at *7 (Bankr. S.D.N.Y. Sept. 30, 2022).

And so here.  Accordingly, the twelfth *Sonnax* factor would weigh in favor of stay relief.[4]

\*               \*               \*

As a consequence, the Court finds and concludes that the fifth *Stockwell* factor, whether grounds for relief from the automatic stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation, weighs to some extent in favor of retroactive relief from the automatic stay.

---

[4]  As to the remaining *Sonnax* factors, they either are not relevant here or do not weigh in favor of or against stay relief.  These are the third *Sonnax* factor, whether the other proceeding involves the debtor as a fiduciary; the fifth *Sonnax* factor, whether the debtor's insurer has assumed full responsibility for defending it; the seventh *Sonnax* factor, whether litigation in another forum would prejudice the interests of other creditors; the eighth *Sonnax* factor, whether the judgment claim arising from the other action is subject to equitable subordination; and the ninth *Sonnax* factor, whether the movant's success in the other proceeding would result in a judicial lien avoidable by the debtor.

*Stockwell Factor 6: Whether failure to grant retroactive relief would cause unnecessary expense to the creditor.*

The sixth factor that the Court considers is whether failure to grant retroactive relief would cause unnecessary expense to Hart Road.  If this Court declines to grant Hart Road's request for *nunc pro tunc* or retroactive relief from the automatic stay, the post-petition sale of the Putnam Avenue Property will be void, as it occurred in violation of the automatic stay.  The sale will likely be scheduled to occur again, and Hart Road will be required once again to bear the costs of re-publishing notice and rescheduling an auction of the Putnam Avenue Property.  *See* Stay Relief Mot. ¶ 35.  As a thirty percent owner of the property, Mr. Crichlow will bear a fraction of all of those costs, in the form of a reduced recovery.  And it is far from certain that a comparable price would be obtained in a second sale.

At the same time, it is worth noting that in assessing this factor, caution is warranted when a creditor has proceeded with a sale that proves to be in violation of the automatic stay.  Expenses in the form of costs and delays associated with noticing and conducting a second sale may appear burdensome and "unnecessary" to a creditor that seeks *nunc pro tunc* or retroactive stay relief.  Whether these costs are "unnecessary" for these purposes may well turn on the central considerations identified above, whether the creditor knowingly acted in violation of the automatic stay, and whether the debtor acted in bad faith.

And here, the record shows that Hart Road did not knowingly act in violation of the automatic stay, because it did not have actual or constructive knowledge of Mr. Crichlow's filing of this bankruptcy case.  To be sure, reasonable diligence might have included a review of PACER to determine whether a second bankruptcy case had been filed, and Hart Road did not take this step.  But the record also shows that Mr. Crichlow did not act in bad faith, as he

identified Hart Road on his list of creditors when he filed this case.

As a consequence, the Court finds and concludes that the sixth *Stockwell* factor, whether failure to grant retroactive relief would cause unnecessary expense to Hart Road, weighs neither for nor against retroactive relief from the automatic stay.

*Stockwell Factor 7: Whether the movant has detrimentally changed its position on the basis of the action taken.*

The seventh factor that the Court considers is whether Hart Road changed its position to its detriment based on the action that it took, to conduct the sale in the Partition Action. As one bankruptcy court has observed, a creditor "detrimentally changed its position when it conducted a sale of the Property, incurred costs in connection with the sale, and transferred its interest in the Property to [the buyer] without first seeking relief from the automatic stay, of which it was unaware." *In re Cunningham*, 506 B.R. 334, 345 (Bankr. E.D.N.Y. 2014).

Here, the record shows that, as in *In re Cunningham*, Hart Road conducted a sale of the Putnam Avenue Property and incurred costs in connection with that sale. The record also shows that Hart Road filed this motion one week after it "discovered the bankruptcy filing two weeks after the auction (16 days post filing), when a title search discovered same." Stay Relief Mot. ¶ 32. That is, upon learning of this bankruptcy case and the automatic stay, Hart Road filed this Stay Relief Motion seeking *nunc pro tunc* or retroactive relief, in order to validate that sale, and now awaits this Court's ruling and order in order to proceed with the closing. *See* Stay Relief Mot. ¶ 35.

Here again, in assessing this factor, courts should be cautious not to encourage creditors to proceed with sales or other actions in violation of the automatic stay, on the assumption that the creditor's detrimental change in position will somehow turn out to be a justification for an

action that violates the automatic stay.  Whether this argument is persuasive again may well turn on the central considerations of whether the creditor knowingly acted in violation of the automatic stay, and whether the debtor acted in bad faith.  And something more than the costs of re-noticing a sale that was conducted in contravention of the automatic stay and moving for stay relief may be required in order to tip the balance in favor of nunc pro tunc or retroactive relief.

As a consequence, the Court finds and concludes that the seventh *Stockwell* factor, whether Hart Road has detrimentally changed its position on the basis of the action that it took, weighs neither for nor against retroactive relief from the automatic stay.

*          *          *

In sum, in the overwhelming majority of circumstances, in the context of debtors, creditors, and the protections of the automatic stay, a prudent creditor seeking to collect on a debt should ask permission rather than forgiveness, and should seek relief from the automatic stay, to pursue their rights under the applicable law with respect to the debt at issue.

But where, as here, the record shows that the creditor did not knowingly act in violation of the automatic stay – but also did not exercise diligence in the form of a simple review of PACER electronic filing records in the days leading up to the sale, the debtor did not act in bad faith, and the factors set out in *In re Stockwell* and other cases are not clearly met, then the unusual relief of *nunc pro tunc* or retroactive modification of the automatic stay is not warranted.

## <u>Conclusion</u>

For the reasons stated herein and based on the entire record, Hart Road's Motion for *nunc pro tunc* or retroactive relief from the automatic stay is denied. The automatic stay that came into effect upon the filing of this bankruptcy case was effective as of April 29, 2024, and remains in effect, subject to a motion for relief from the automatic stay that Hart Road may elect to bring. An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.

Dated: Brooklyn, New York
October 31, 2024



_____
**Elizabeth S. Stong**
**United States Bankruptcy Judge**